STATE OF NORTH CAROLINA v. WILLIAM K. CHAPMAN

No. 221A95

(Filed 13 June 1996)

**1. Criminal Law § 86 (NCI4th)— first-degree murder—no unnecessary delay in initial appearance before magistrate**

There was no error in a first-degree murder prosecution where defendant contended that his confession should have been suppressed based on a delay in having a magistrate determine whether there was probable cause for the issuance of an arrest warrant. Defendant was arrested at 9:30 a.m. by officers without a warrant and a magistrate issued an arrest warrant based on probable cause after his interrogation was complete at 12:30 p.m.

**Am Jur 2d, Criminal Law §§ 859-864.**

**2. Arrest and Bail § 57 (NCI4th)— first-degree murder—confession—delay in initial appearance before magistrate**

There was no constitutional violation requiring the suppression of defendant's confession in a first-degree murder prosecution where defendant contended that his confession was obtained in violation of Article I, Section 20 of the North Carolina Constitution based on delay in having a magistrate determine whether there was probable cause for issuance of an arrest warrant. Article I, Section 20 concerns the impropriety of general warrants and is not applicable here.

**Am Jur 2d, Arrest §§ 37 et seq.**

**Peace officer's delay in making arrest without a warrant for misdemeanor or breach of peace. 58 ALR2d 1056.**

**Delay between filing of complaint or other charge and arrest of accused as violation of right to speedy trial. 85 ALR2d 980.**

**Right, without judicial proceeding, to arrest and detain one who is, or is suspected of being, mentally deranged. 92 ALR2d 570.**

**3. Criminal Law § 86 (NCI4th)— first-degree murder—initial appearance before magistrate**

A first-degree murder defendant's right to be taken before a magistrate without unnecessary delay as required by N.C.G.S.

§ 15A-501(2) was not violated where defendant was arrested at 9:30 a.m. and a large part of the time until defendant was taken before a magistrate at 8:00 p.m. was spent interrogating the defendant. There were several crimes involved, the officers had the right to conduct these interrogations, and it did not cause an unnecessary delay for them to do so.

**Am Jur 2d, Criminal Law §§ 859-864.**

4. **Arrest and Bail § 135 (NCI4th)— first-degree murder— right to communicate with friends—failure to advise—not prejudicial**

A first-degree murder defendant was not prejudiced by the failure to advise him of his right to communicate with his friends, in light of the language of *State v. Curmon,* 295 N.C. 453, that "[I]n view of the findings that defendant was informed of his *Miranda* rights, waived these rights, and voluntarily submitted his statement to police, we do not see how defendant could have suffered prejudice had he actually been denied his statutory right to communicate with friends." N.C.G.S. § 15A-501(5)

**Am Jur 2d, Criminal Law §§ 737, 738.**

**Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.**

5. **Evidence and Witnesses § 1221 (NCI4th)— first-degree murder—confession—delay in initial appearance before magistrate—atmosphere of interrogation**

A first-degree murder defendant's confession should not have been suppressed as involuntary where defendant contended that there was an unreasonable delay in bringing him before a magistrate and that the atmosphere in which he made the confession was so coercive that it was not the product of his own free will. It has been held elsewhere in this opinion that there was not an unreasonable delay in taking the defendant before a magistrate. The fact that defendant saw a photograph of the deceased in every direction he turned does not indicate that his free will was overturned; the photographs contained no threat or promise of reward which would invalidate the confession. The deceit practiced by the detective in implying that a note found next to the victim had been determined to be in defendant's handwriting and that defendant's fingerprints were on the note, when the detective knew that this was not true, did not require the court to find that

STATE v. CHAPMAN

[343 N.C. 495 (1996)]

the confession was not of defendant's own free will, that it was the product of fear or hope of reward, or that the deceit was calculated to produce an untrue statement. The trial court specifically found that there were no promises, offers of reward, or inducements to the defendant to make a statement, that there were no threats or suggestions of violence to persuade or induce the defendant to make a statement, and that defendant appeared coherent and not under the influence of drugs or alcohol, and those findings are supported by competent evidence.

**Am Jur 2d, Evidence §§ 735, 736, 749.**

**Civil liability, under federal civil rights statute (42 USC § 1983) of state officers who coerce or attempt to coerce confessions or pleas of guilty. 55 ALR2d 512.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Ross, J., in a case tried capitally to a jury at the 17 October 1994 Criminal Session of Superior Court, Guilford County, upon a verdict of first-degree murder. The defendant's motion to bypass the Court of Appeals as to an additional conviction for robbery with a dangerous weapon was allowed 24 May 1995. Heard in the Supreme Court 15 February 1996.

The defendant was tried for first-degree murder and robbery with a dangerous weapon. The State asked for the death penalty. The defendant made a motion to suppress a statement he had made, and a hearing on this motion was held prior to trial. The evidence at the hearing showed that on 31 May 1993, Mr. Eugene Bullard was murdered in his home. His body was found with three stab wounds. The defendant was questioned in regard to the murder, but no charges were filed.

On 23 August 1993, at approximately 9:30 a.m., the defendant was arrested at the First Union National Bank on Main Street in High Point for attempting to cash a forged check. He waived his *Miranda* rights and admitted to police officers Walter Heaviland and Kenneth Leonard that he had attempted to cash a check that he had forged after taking it in a robbery. The two officers placed the defendant under arrest and took him to the police station. They then took the defendant to Kirkland Park School to search for a purse that had been taken in the robbery. The officers returned with the defendant to the police station, where he was questioned by Detective Sandy Vuncannon, who was investigating the uttering and forgery charges.

STATE v. CHAPMAN

[343 N.C. 495 (1996)]

The defendant waived his constitutional rights and confessed to both crimes. Det. Vuncannon procured warrants for the charges at 12:15 p.m. and served them on the defendant.

The defendant was then questioned by a detective who was investigating the robbery in which the checks were taken, and the defendant confessed to this crime at 1:27 p.m. A warrant was typed for this crime but was not delivered to a magistrate at that time.

The defendant was then interviewed by Detective Mark McNeill in regard to the robbery and murder of Eugene Bullard. Det. McNeill testified that he put nine photographs of Mr. Bullard on the walls of the room and one photograph on the floor directly in front of the chair in which the defendant sat during the interrogation. This was done so that the defendant would see a photograph of Mr. Bullard in every direction he turned. During the interview, Det. McNeill implied to the defendant that a note found next to Mr. Bullard's body had been the subject of a handwriting analysis that showed it was in the handwriting of the defendant and that the defendant's fingerprints were on the note. Det. McNeill knew that this was not true. The defendant confessed to the murder at approximately 7:05 p.m. He was taken before a magistrate at approximately 8:00 p.m.

The court found facts consistent with the evidence and overruled the motion to suppress. The defendant was convicted of the robbery of Mr. Bullard. He was also convicted of the murder of Mr. Bullard based on premeditation and deliberation and felony murder. The jury recommended that the defendant be sentenced to life in prison, which sentence was imposed. He was also sentenced to a consecutive term of forty years in prison for robbery with a dangerous weapon.

The defendant appealed.

*Michael F. Easley, Attorney General, by Wm. Dennis Worley, Associate Attorney General, for the State.*

*John Bryson and Stanley Hammer for the defendant-appellant.*

WEBB, Justice.

[1] The defendant's only argument on appeal is that his confession should have been suppressed. He says this is so for several reasons. He first contends, relying on *County of Riverside v. McLaughlin,* 500 U.S. 44, 114 L. Ed. 2d 49 (1991), and *Gerstein v. Pugh,* 420 U.S. 103,

43 L. Ed. 2d 54 (1975), that there was an unreasonable delay in having a magistrate determine whether there was probable cause for the issuance of an arrest warrant. These two cases deal with the promptness required for a determination of probable cause by a neutral magistrate after a person has been arrested without a warrant. They make clear that this determination does not have to be made after an adversarial hearing with the defendant present.

In this case, the defendant was arrested at 9:30 a.m. by officers without a warrant. After his interrogation was complete at 12:30 p.m., a magistrate issued an arrest warrant for him based on probable cause. This satisfies the requirement of *Riverside* and *Gerstein* that a magistrate promptly determine probable cause. The defendant was then lawfully in custody and could be interrogated in regard to other crimes.

[2] The defendant also contends that his confession was obtained in violation of Article I, Section 20 of the North Carolina Constitution. This section concerns the impropriety of general warrants and is inapplicable to this case. We find no constitutional violation requiring the suppression of the defendant's confession.

[3] The defendant next contends that his right to be taken before a magistrate without unnecessary delay as required by N.C.G.S. § 15A-501(2) was violated. From the time the defendant was arrested at 9:30 a.m. until he was taken before a magistrate at 8:00 p.m., a large part of the time was spent interrogating the defendant. There were several crimes involved. The officers had the right to conduct these interrogations, and it did not cause an unnecessary delay for them to do so. *See State v. Littlejohn*, 340 N.C. 750, 459 S.E.2d 629 (1995).

[4] The defendant also says the officers did not advise him of his right to communicate with friends in violation of N.C.G.S. § 15A-501(5). The superior court found and the State concedes that the defendant was not advised of this right. We faced this question in *State v. Curmon*, 295 N.C. 453, 245 S.E.2d 503 (1978). We said, "[I]n view of the findings that defendant was informed of his *Miranda* rights, waived these rights, and voluntarily submitted his statement to police, we do not see how defendant could have suffered prejudice had he actually been denied his statutory right to communicate with friends." *Id.* at 456-57, 245 S.E.2d at 505. We hold, based on the language of *Curmon*, that the defendant was not prejudiced by the failure to advise him of his right to communicate with his friends.

STATE v. CHAPMAN

[343 N.C. 495 (1996)]

**[5]** The defendant next contends the confession should have been suppressed because it was involuntary. "The standard for judging the admissibility of a defendant's confession is whether it was given voluntarily and understandingly. Voluntariness is to be determined from consideration of all circumstances surrounding the confession." *State v. Schneider*, 306 N.C. 351, 355, 293 S.E.2d 157, 160 (1982) (citation omitted).

The defendant does not challenge the findings of fact of the superior court but does contend that considering the totality of the circumstances, it was error for the court to conclude the confession was voluntary. *State v. Hicks*, 333 N.C. 467, 428 S.E.2d 167 (1993). The defendant says that the atmosphere in which he made the confession was so coercive that it was not the product of his own free will. He says the unreasonable delay in bringing him before a magistrate, the placing of photographs of the deceased so that he had to look at the photographs in every direction he turned, and the deceit of the officers in telling him that his handwriting matched the handwriting on a note found next to the body and that his fingerprints were on the note compel a finding that the confession must be excluded.

We have held that there was not an unreasonable delay in taking the defendant before a magistrate. The fact that defendant saw a photograph of the deceased in every direction he turned does not indicate his free will was overborne. The photographs contained no threat or promise of reward to him which would invalidate the confession. *State v. Rook*, 304 N.C. 201, 283 S.E.2d 732 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). We held in *State v. Jackson*, 308 N.C. 549, 304 S.E.2d 134 (1983), that the fact that an officer told the defendant that his fingerprints were found on the murder weapon and at other places in the victim's home, which statement was not true, did not require the court to suppress the confession. The deceit practiced by Det. McNeill did not require the court to find that the confession was not of the defendant's own free will, that it was the product of fear or hope of reward, or that the deceit was calculated to produce an untrue statement.

The trial court in this case specifically found that there were no promises, offers of reward, or inducements to the defendant to make a statement; that there were no threats or suggestions of violence to persuade or induce the defendant to make a statement; and that the defendant appeared coherent and not under the influence of drugs or alcohol. Careful review of the record reveals that these findings are

supported by competent evidence and that the trial court properly concluded that the defendant's statements were voluntarily and freely made.

It was not error to deny the defendant's motion to suppress the confession.

NO ERROR.